| | | |
|---|---|---|
| Farid Ahmad Mangal, | ) | Civil Action No.:  6:18-cv-00106-RBH |
| *a/k/a* Farid Ahmad Maugal, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Warden, | ) | |
| Perry Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Farid Ahmad Mangal, a state prisoner proceeding pro se and in forma pauperis, has

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See* ECF No. 1.  The matter

is before the Court for consideration of Petitioner's objections to the Report and Recommendation ("R

& R") of United States Magistrate Judge Kevin F. McDonald, who recommends granting Respondent's

motion for summary judgment and denying Petitioner's § 2254 petition.[1]  *See* ECF Nos. 52 & 59.  The

Court adopts in part and rejects in part the R & R for the reasons explained herein.

## **Background**[2]

The State of South Carolina indicted Petitioner for criminal sexual conduct with a minor, lewd

act upon a child, and incest, alleging he sexually abused his daughter from ages ten to sixteen.  *See*

*generally* ECF No. 20-39 (indictments and warrants).  Petitioner proceeded to trial in 2007 and was

represented by attorney Lawrence W. Crane ("trial counsel"); the jury found him guilty of all charges;

---

[1]    This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule
73.02(B)(2)(c) (D.S.C.).

[2]    The R & R thoroughly summarizes the factual and procedural background of this case, with applicable dates
and citations to the record.

and the trial court sentenced him to thirty years in prison.[3]  *See* App.[4] 1–555.  Petitioner filed a direct appeal, and the South Carolina Court of Appeals summarily affirmed his convictions and sentences in an unpublished opinion.  *See* ECF Nos. 20-11 through 20-16.  The South Carolina Supreme Court denied certiorari to review the Court of Appeals' decision.  *See* ECF Nos. 20-17 through 20-20.

Petitioner then filed a pro se application for post-conviction relief ("PCR") in state court.  *See* App. 557–62.  In April 2011, the PCR court held an evidentiary hearing at which Petitioner—represented by attorney J. Falkner Wilkes ("PCR counsel")—and trial counsel testified. App. 568–615.  The PCR court denied and dismissed Petitioner's application in a written order.  App. 616–622; ECF No. 20-21.  Petitioner filed a motion to alter or amend pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure, App. 623–33, and the PCR court issued a written order denying the motion.  App. 639–40.  Petitioner appealed, and the South Carolina Court of Appeals reversed the PCR court's decision and *remanded the case for a new trial*.  App. 680–88; *see Mangal v. State*, 781 S.E.2d 732 (S.C. Ct. App. 2015) ("*Mangal I*") (holding trial counsel was ineffective for not objecting to improper bolstering testimony).  However, the South Carolina Supreme Court granted the State's petition for a writ of certiorari, found Petitioner's PCR claim was procedurally defaulted, reversed the Court of Appeals' decision, and *reinstated the PCR court's decision*.  ECF No. 20-34; *see Mangal v. State*, 805 S.E.2d 568 (S.C. 2017) ("*Mangal II*") (finding it inappropriate to excuse Petitioner's procedural default).

---

[3]     Specifically, the jury convicted Petitioner of criminal sexual conduct ("CSC") with a minor in the first degree, two counts of second-degree CSC with a minor, lewd act upon a child, and incest.  App. 531.  The trial court imposed concurrent prison sentences of thirty years for first-degree CSC, twenty years for each second-degree CSC charge, fifteen years for lewd act, and one year for incest.  App. 554–55; ECF No. 20-39 at pp. 1–15.

[4]     The Court cites the page numbers from the state-court appendix ("App.") filed in the S.C. Supreme Court, available at ECF Nos. 20-6, 20-7, and 20-8.

Petitioner then filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* ECF No. 1. Respondent answered by filing a return and a motion for summary judgment. *See* ECF Nos. 20 & 21. Petitioner filed a response in opposition to Respondent's motion. *See* ECF No. 34. The Magistrate Judge issued an R & R recommending that the Court grant Respondent's motion and deny Petitioner's § 2254 petition. *See* R & R [ECF No. 52]. Petitioner filed timely objections to the R & R. *See* Pet.'s Objs. [ECF No. 59]. Respondent did not respond to Petitioner's objections.

## Legal Standards

### I. Review of the Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

## II.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see generally* Rule 12 of the Rules Governing Section 2254 Cases ("The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) ("Federal Rule of Civil Procedure 56 'applies to habeas proceedings.'" (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991))).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The evidence must be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor.  The court therefore cannot weigh the evidence or make credibility determinations." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 413 (4th Cir. 2015) (internal citation and quotation marks omitted).

### Discussion

Petitioner alleges trial counsel was ineffective by failing to object to and by eliciting testimony that improperly bolstered the victim's credibility.[5]  The Magistrate Judge recommends granting Respondent's motion for summary judgment because Petitioner's claims are procedurally defaulted and

---

[5]     Petitioner states two enumerated grounds for relief in his § 2254 petition: Ground One alleges a trial court error regarding a mistrial motion, while Ground Two alleges ineffective assistance of counsel based on improper bolstering testimony and on a separate expert qualification issue.  *See* ECF Nos. 1 & 1-1.  However, as the R & R explains, Petitioner expressly abandoned Ground One in his response in opposition to the motion for summary judgment, *see* ECF No. 34 at p. 12, and he does not specifically object to the Magistrate Judge's recommendation to grant summary judgment as to Ground One on this basis.  *See* R & R at p. 17.

because the default cannot be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). *See* R & R at pp. 17–39. Petitioner specifically objects to the Magistrate Judge's recommendation that his default cannot be excused under *Martinez*, and he requests an evidentiary hearing on his *Martinez* claims. *See* Pet.'s Objs. at pp. 2–9.

## I.    Applicable Law

### A.    Procedural Default & The *Martinez* Exception

"Before seeking federal habeas review of a claim, a petitioner ordinarily must raise that claim in the state court, complying with state procedural rules and exhausting available state remedies." *Gray v. Zook*, 806 F.3d 783, 797–98 (4th Cir. 2015). "[I]f a claim is exhausted in state court and not procedurally defaulted, then it was adjudicated on the merits and is subject to review under the deferential standards set forth in [28 U.S.C.] § 2254(d)." *Id.*[6]

*However*, "[u]nder the well-established doctrine of procedural default, a federal habeas court may not review a claim that a state court has found to be clearly and expressly defaulted under an independent and adequate state procedural rule unless the prisoner can demonstrate [1] cause for the default and prejudice resulting therefrom or [2] that a failure to consider the claims will result in a fundamental miscarriage of justice." *Juniper v. Zook*, 876 F.3d 551, 565 n.6 (4th Cir. 2017).

In *Martinez*, the U.S. Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. "*Martinez* is an exception that enables habeas

---

[6]    Review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is "highly constrained" and based on the record before the state PCR court. *Lawrence v. Branker*, 517 F.3d 700, 707 (4th Cir. 2008). A court "shall not" grant a habeas petition unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [U.S.] Supreme Court," or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

petitioners to obtain merits review of otherwise procedurally defaulted claims under certain circumstances." *Teleguz v. Zook*, 806 F.3d 803, 815 (4th Cir. 2015).[7]

When a state—such as South Carolina[8]—limits ineffective-assistance-of-trial-counsel claims to collateral review, a petitioner may invoke *Martinez* if he can demonstrate (1) that state PCR counsel "was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) that the underlying ineffective-assistance-of-trial-counsel claim is "substantial." *Buck v. Davis*, 137 S. Ct. 759, 771 (2017); *see Porter v. Zook*, 898 F.3d 408, 438 (4th Cir. 2018). The Fourth Circuit has expounded on the requirement of a "substantial" claim:

> Regarding the requirement that there be a "substantial" claim, the Supreme Court held that a prisoner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. Relatedly, to show ineffective assistance, the petitioner must make a "substantial" showing with respect to both counsel's competency (first-prong *Strickland*) and prejudice (second-prong *Strickland*).
>
> As to the specific elements of the ineffective assistance claim, a petitioner must make a substantial showing of incompetency, i.e., that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Further, the petitioner must make a substantial showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose

---

[7] "*Martinez* provides a narrow exception to the general rule, stated in *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991), that errors committed by state habeas counsel do not provide cause to excuse a procedural default." *Gray*, 806 F.3d at 788. "*Martinez* did not purport to displace *Coleman* as the general rule governing procedural default. Rather, it 'qualifie[d] *Coleman* by recognizing a narrow exception' that applies only to claims of 'ineffective assistance of counsel at trial' and only when, 'under state law,' those claims 'must be raised in an initial-review collateral proceeding.'" *Davila v. Davis*, 137 S. Ct. 2058, 2065–66 (2017) (quoting *Martinez*, 566 U.S. at 9, 17). "This limited qualification of the *Coleman* rule was based on the fact that when an 'initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim.'" *Fowler v. Joyner*, 753 F.3d 446, 460 (4th Cir. 2014) (quoting *Martinez*, 566 U.S. at 11).

[8] *See State v. Felder*, 351 S.E.2d 852, 852 (S.C. 1986) ("This Court usually will not consider an ineffective assistance of counsel issue on appeal from a conviction.").

> result is reliable, i.e., that there was a substantial, not just
> conceivable, likelihood of a different result.

*Teleguz*, 806 F.3d at 815 (ellipsis, some internal quotation marks, and some internal citations omitted).

Significantly, "because a petitioner raising a *Martinez* claim never presented the claim in state court, a federal court considers it de novo, rather than under AEDPA's deferential standard of review." *Gray*, 806 F.3d at 789.[9]

### B.    *Strickland* Test

Claims of ineffective assistance of counsel must be reviewed under the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show counsel's performance was deficient and fell below an objective standard of reasonableness.  *Id.* at 687–88.  Second, the petitioner must show prejudice, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

In sum, "[a] prisoner petitioning for habeas relief based on ineffective assistance of counsel must meet two components: a petitioner must show [1] that counsel's performance was deficient, and [2] that the deficiency prejudiced the defense."  *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019) (internal quotation marks and original brackets omitted).

## II.    Analysis

Petitioner's ineffective assistance claims concern three trial witnesses: (1) forensic interviewer Wiley Garrett, (2) pediatrician Dr. Nancy Henderson, and (3) the victim's mother Diane Farid.

---

[9]     *Martinez* is inapplicable in South Carolina state court.  *Mangal II*, 805 S.E.2d at 575 (citing *Robertson v. State*, 795 S.E.2d 29 (S.C. 2016), and *Kelly v. State*, 745 S.E.2d 377 (S.C. 2013)); *see Kelly*, 745 S.E.2d at 377 ("[W]e hereby recognize that the holding in *Martinez* is limited to federal habeas corpus review and is not applicable to state post-conviction relief actions.").

Petitioner alleges trial counsel was ineffective by failing to object to and by eliciting certain testimony from these three witnesses that had the effect of improperly bolstering the victim's credibility.[10] Petitioner faults PCR counsel for failing to properly raise these ineffective-assistance-of-trial-counsel claims in the state proceedings, and thus seeks to bring them in this federal Court pursuant to *Martinez*.

As the Magistrate Judge correctly explains, the opinions of the South Carolina Supreme Court and the South Carolina Court of Appeals make clear that Petitioner's claims are defaulted under South Carolina procedural rules governing issue preservation and presentation of issues to a PCR court.[11] *See Juniper*, 876 F.3d at 565 n.6 (explaining the standard for procedural default). Moreover, Petitioner does not object to the Magistrate Judge's conclusion that the claims are procedurally defaulted. Instead, he asserts "[t]he procedural bar should be lifted" pursuant to *Martinez*. Pet.'s Objs. at pp. 7–8.

Again, to overcome the procedural default and for this Court to review his claims of ineffective assistance of trial counsel under *Martinez*, Petitioner must show (1) that the claims are substantial (i.e., have "some merit") and (2) that PCR counsel was ineffective for failing to raise them in the state PCR proceedings. *Buck*, 137 S. Ct. at 771. The Court will consider each requirement in turn, beginning with the ineffective-assistance-of-trial-counsel claims. *Cf. Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D.

---

[10] In Ground Two, Petitioner makes an additional claim that trial counsel was ineffective for failing to object to Wiley Garrett's qualification as an expert. *See* ECF No. 1-1 at p. 9. The Magistrate Judge recommends granting summary judgment as to this separate claim, *see* R & R at p. 25, and Petitioner does not specifically object to this recommendation. The Court discerns no clear error in the Magistrate Judge's analysis of the expert qualification issue, and will therefore adopt the R & R as to that separate issue.

[11] Specifically, the S.C. Supreme Court found Petitioner's claim regarding Dr. Henderson was not properly presented to the PCR court, and the S.C. Court of Appeals (which was reversed on the Dr. Henderson issue) found Petitioner's claims regarding Garrett and the victim's mother were not preserved for appellate review; in reaching these results, both courts relied on established state-law principles governing issue preservation and presentation of issues to the PCR court. *See Mangal II*, 805 S.E.2d at 576 ("This is not an appropriate case in which to excuse Mangal from his procedural default."); *Mangal I*, 781 S.E.2d at 735–36 ("[W]e find any bolstering issues related to other witnesses are unpreserved because they were not raised in Petitioner's PCR application, the PCR hearing, or in the Rule 59(e) motion.").

8

Va. 2015) ("If an underlying trial-ineffectiveness claim has no merit, then it fails not only under *Martinez*'s first element, but also the second element, because [PCR] counsel could not have been ineffective for failing to raise a meritless claim.").

### A. Whether Trial Counsel Was Ineffective

#### 1. Summary of Underlying Facts

"The facts surrounding Mangal's sex crimes are set forth in detail in the court of appeals' opinion." *Mangal II*, 805 S.E.2d at 569; *see Mangal I*, 781 S.E.2d at 733–34. The R & R also summarizes much of the testimony presented at Petitioner's 2007 trial. *See* R & R at pp. 2–5. In brief,

> [T]he victim—Mangal's nineteen-year-old daughter—testified Mangal had been sexually assaulting her since she was ten years old. She described where, when, and how it happened. On cross-examination, trial counsel questioned the victim about inconsistencies in her testimony and suggested she had a motive to lie about the sexual abuse—to gain freedom from Mangal's strict parenting. Mangal testified in his defense and claimed the victim and her mother fabricated the allegations.

*Mangal II*, 805 S.E.2d at 569–70. "Trial counsel's theory of the case was that Victim and [her] mother (Mother) fabricated the abuse allegations because Victim wanted freedom from Petitioner's strict parenting and Mother wanted to continue having an extra-marital affair." *Mangal I*, 781 S.E.2d at 734.

The State called the victim as its first witness, and it called forensic interviewer Wiley Garrett and pediatrician Dr. Nancy Henderson as its final two witnesses.[12] *See* App. 5–39, 45–90, 116–69. Petitioner called the victim's mother (his ex-wife Diane Farid) as the third defense witness, and she

---

[12] The State's only other witness was one of the victim's younger brothers, Rashan, who was a sophomore in high school at the time of trial. *See* App. 91–112. Rashan testified his sister told him "it started when she was ten, and it happened until she was sixteen." App. 96. He also "testified there were numerous occasions over the years when Petitioner took Victim into a locked room for twenty or thirty minutes, and Victim would leave the room visibly upset and crying and would go to the bathroom." *Mangal I*, 781 S.E.2d at 733; *see* App. 98.

testified immediately before he did.[13]  App. 257–320, 324–96.  Petitioner's improper bolstering claims are based on certain testimony given by Garrett, Dr. Henderson, and the victim's mother.

### 2.    Improper Bolstering

"[A]ny testimony by one witness as to their opinion about the credibility of another witness" is inadmissible, "incompetent evidence." *State v. Dawkins*, 377 S.E.2d 298, 302 (S.C. 1989); *State v. Dempsey*, 532 S.E.2d 306, 309–10 (S.C. Ct. App. 2000) (recognizing *Dawkins* stands for the principle that a witness cannot "improperly vouch[] for the victim's credibility").[14]  "[A]fter *State v. Dawkins* was decided in 1989, the law was clear that ***no witness*** may give an opinion as to whether the victim is telling the truth." *Thompson v. State*, 814 S.E.2d 487, 491 (S.C. 2018) (emphasis added) (quoting *Briggs v. State*, 806 S.E.2d 713, 718 (S.C. 2017)).[15]  "[T]he central point of the prohibition against improper bolstering [is that] a witness may not give an opinion for the purpose of conveying to the jury—directly or indirectly—that she believes the victim." *Briggs*, 806 S.E.2d at 717; *see Thompson*, 814 S.E.2d at 491 ("[I]t [i]s improper for a witness to vouch for the credibility of another witness."). "[N]o witness may give an opinion as to whether the victim is telling the truth," and "[w]hen the testimony directly conveys the witness's opinion that the victim is telling the truth, it is obviously improper bolstering." *Briggs*, 806 S.E.2d at 718.

### 3.    Testimony at Issue

---

[13]      Petitioner's other witnesses were a records custodian (Leslie Mostile), the family doctor (Dr. Medlock) who had routinely treated the victim, Petitioner's one-time neighbor (Kevin Riddle), a detention center employee (Mike Ennis) who had inspected Petitioner's penis, Petitioner's former employer (Jim Brock) from his residential construction job, and a former client (Elizabeth Waddell) of Petitioner.  *See* App. 202–51, 402–61.

[14]      *See also United States v. Hayes*, 322 F.3d 792, 800 (4th Cir. 2003) ("It is impermissible for a prosecutor to . . . elicit one witness' opinion that another witness has told the truth.").

[15]      Although *Thompson* and *Briggs* are recent decisions, they summarize law from *Dawkins* and *Dempsey* that was well-established and available at the time of Petitioner's 2007 trial.  The R & R does not discuss *Dawkins*, *Thompson*, or *Briggs*.

Petitioner argues trial counsel was ineffective by failing to object to and by eliciting improper bolstering testimony. The Court will first address the *Strickland* deficiency prong as it relates to each witness, and then jointly address the *Strickland* prejudice prong.

### a.  Deficiency Prong

#### (i)  Wiley Garrett

Wiley Garrett, a licensed social worker, conducted two forensic interviews of the victim and was qualified as an expert "in the area of forensic interviewing to give opinion testimony in that area." App. 122. On direct examination by the State, he testified that one of his "ultimate purpose[s]" in conducting forensic interviews is to determine whether a child has made "a clear[,] consistent disclosure," and he confirmed that part of the process is "*to determine whether there's **fabrication***." App. 123–24 (emphasis added).

Garrett interviewed the victim twice in July 2004 at the Children's Advocacy Center in Spartanburg, South Carolina. App. 117, 125, 129. The victim—who was sixteen at the time of the interview—disclosed to him that she had been sexually assaulted multiple times beginning at age ten and that this happened in her parents' bedroom. App. 125–26. The State then elicited the following testimony, which Petitioner claims was improper bolstering:

> **Q:**    **What conclusion did you make regarding your forensic interview of Victim?[16]**
>
> **A:**    **Oh, oh.  My, <u>my conclusion was that her disclosure was *clear, consistent, and compelling* disclosure of sexual abuse.</u>**
>
> **Q:**    **Do you have an opinion then within a reasonable degree**

---

[16]    The victim's actual name was used at trial, and it has been redacted from the original trial transcript and replaced with the word "Victim" for privacy purposes.

> **of psychological certainty, based upon your education, training, and experience, and based further upon your forensic interview of Victim, whether your findings are consistent with a child who's been sexually abused?**
>
> **A:     Yes, I, <u>I do have a conclusion and yes, Victim['s] words, disclosures, descriptions, emotions, reactions are all _consistent_ with a child who has been sexually abused.</u>**

App. 130; Supp. App. #2 [ECF No. 20-10] at p. 4 (emphases added). Trial counsel did not object to this testimony, and Respondent candidly "***concedes*** that the answer given by Mr. Garrett was inadmissible under state law if a proper objection had been raised." ECF No. 20 at p. 51 (emphasis added). However, Respondent contends that "the record evinces *counsel's strategy* to utilize Mr. Garrett's testimony to undermine the victim's credibility at the time that counsel failed to raise an objection based on improper bolstering." *Id.* at p. 52 (emphasis added). At this time, the Court disagrees with Respondent that the record—*as it currently exists*—"evinces" such a trial strategy. There is no PCR testimony of trial counsel on this issue in the record.

The deficiency prong of the *Strickland* test requires Petitioner to show trial counsel's representation was objectively unreasonable, and the Court is mindful that "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "The proper measure of attorney performance [is] reasonableness *under prevailing professional norms*." *Id.* at 688 (emphasis added).

As mentioned above, Petitioner's trial occurred in 2007. After 1989, South Carolina law was "clear" that no witness may opine that a victim is telling the truth. *Thompson*, 814 S.E.2d at 491 (citing

*Dawkins*); *Briggs*, 806 S.E.2d at 718 (same). More specifically, regarding forensic interviewers, "[a]fter

*Dawkins* in 1989, . . . reasonably competent trial counsel should know to object—absent a valid trial

strategy—when a forensic interviewer gives testimony that indicates the witness believes the victim,

but does not serve some other valid purpose." *Briggs*, 806 S.E.2d at 718; *see State v. White*, 578 S.E.2d

728, 733 (S.C. Ct. App. **2003**) (considering an improper bolstering challenge and recognizing *Dawkins*

"and its progeny" establish "the proper boundaries of expert testimony regarding . . . sexual abuse"),

*aff'd as modified*, 605 S.E.2d 540 (S.C. 2004); *State v. Dempsey*, 532 S.E.2d 306, 309 (S.C. Ct. App.

**2000**) ("[N]o psychotherapist may render an opinion on whether a witness is credible in any trial in this

state. The assessment of credibility is for the trier of fact and not for psychotherapists."); *State v.

Morgan*, 485 S.E.2d 112, 119 (S.C. Ct. App. **1997**) ("Prejudice can result from an expert's testimony

about the victim's credibility, by giving factfinders little more than a false sense of security based on

the incorrect assumption that a reasonably accurate scientific explanation for behavior has been

provided." (internal quotation marks omitted)), *overruled on other grounds by State v. White*, 676

S.E.2d 684 (S.C. 2009).[17] "That such evidence is improper, in both state and federal trials, can hardly

---

[17]    Federal courts—including the Fourth Circuit—had issued similar decisions before 2007. *See, e.g.*, *United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988) ("[T]he authorities seem uniform that a psychiatrist may not testify to the credibility of a witness; that issue is one for the jury."); *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995) ("[T]he evaluation of a witness's credibility is a determination usually within the jury's exclusive purview."); *United States v. Hayes*, 322 F.3d 792, 800 (4th Cir. 2003) ("It is impermissible for a prosecutor to . . . elicit one witness' opinion that another witness has told the truth. *See United States v. Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993)."); *Hodge v. Hurley*, 426 F.3d 368, 387 n.26 (6th Cir. 2005) (condemning expert testimony that "essentially allow[ed the complaining witness]'s contested testimony—the credibility of which was the key issue in the trial court—to bootstrap its way to scientific certainty"); *Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001) (recognizing "expert testimony bolstering the credibility of a witness is improper"); *United States v. Rosario-Diaz*, 202 F.3d 54, 65 (1st Cir. 2000) ("[T]he prosecution cannot accomplish such improper bolstering of a witness through the testimony of other government witnesses."); *Snowden v. Singletary*, 135 F.3d 732, 738 (11th Cir. 1998) ("That such evidence [vouching testimony by an expert witness] is improper, in both state and federal trials, can hardly be disputed."); *United States v. Whitted*, 11 F.3d 782, 785–86 (8th Cir. 1993) ("A doctor also cannot pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility."); *United States v. Azure*, 801 F.2d 336, 339 (8th Cir. 1986) (holding that a pediatrician "was not qualified to give an opinion on the credibility of [the victim] and that the challenged testimony invaded the exclusive province of the jury to determine the credibility of witnesses"); *Westcott v. Crinklaw*, 68 F.3d 1073, 1077

be disputed," *Snowden v. Singletary*, 135 F.3d 732, 738 (11th Cir. **1998**), and the reason is simple—"[d]etermining the weight and credibility of witness testimony . . . belongs to the jury." *United States v. Scheffer*, 523 U.S. 303, 313 (**1998**).

Again, as Respondent concedes, Garrett's above-quoted testimony constituted improper bolstering. Thus, the question is whether trial counsel made an "informed strategic choice," *Strickland*, 466 U.S. at 691, not to object to Garrett's inadmissible testimony that the victim's disclosure to him was a "clear, consistent, and compelling disclosure of sexual abuse" and that her "words, disclosures, descriptions, emotions, reactions are all consistent with a child who has been sexually abused." If trial counsel *chose* not to object pursuant to a "sound trial strategy," *Strickland*, 466 U.S. at 689, the Court could potentially conclude his performance was objectively reasonable despite the inadmissibility of this testimony. *See Strickland*, 466 U.S. at 693 ("Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another."). Although trial counsel did not object to Garrett's improper bolstering testimony, he asked Garrett during cross-examination if he (Garrett) had dealt with sixteen-year-old girls who had made similar allegations that "turned out to be untrue," and Garrett said, "Oh, yes, I have." App. 143.

However, it is unclear whether trial counsel's apparent strategy of demonstrating fabrication—by showing inconsistencies in the victim's reports of sexual abuse[18]—would have been advanced by allowing Garrett to effectively testify he believed the victim's "*clear, consistent, and compelling* disclosure of sexual abuse" while bootstrapping that conclusion to his expert opinion.

---

(8th Cir. 1995) ("*Azure* and *Whitted* plainly stand for the proposition that expert testimony going to the issue of credibility is not admissible.").

[18]     Trial counsel testified at the state PCR hearing that the case "came down to the credibility of the witnesses, primarily the daughter," App. 572, and he asserted "her testimony was not consistent" with that from family court proceedings." App. 83.

Significantly, leading up to this testimony, Garrett had confirmed one of the purposes of forensic interviewing was "to determine whether there's fabrication." App. 123–24. *See, e.g.*, *Briggs*, 806 S.E.2d at 720 ("[Trial counsel]'s strategy of showing nobody believed the victim, and thus the abuse did not happen, could not have been advanced by allowing [the State's expert forensic interviewer] to testify she believed her."); *see, e.g.*, *Leaphart v. Eagleton*, No. 2:15-cv-04910-JMC, 2017 WL 1160418, at *8 (D.S.C. Mar. 29, 2017) ("Although the trial record evinces trial counsel's general strategy, it does not disclose whether he made an informed, strategic decision to permit, rather than object to, the admission of the [evidence].").

Moreover, based on trial counsel's limited testimony regarding Dr. Henderson at the PCR hearing, it is unclear whether he understood the concept of improper bolstering and the permissible scope of an expert's testimony. *See* App. 584, 595–96; *see, e.g.*, *Olesen v. Class*, 164 F.3d 1096, 1102 (8th Cir. 1999) ("[G]iven the state of South Dakota's evidentiary rules and case law at the time of his trial, a reasonably prudent lawyer would have objected to [the psychologist's] opinion testimony."). Of course, the PCR transcript is silent on the issue of Garrett, and the record has not been developed on this particular issue. As the record currently stands, the Court is unable to conclude that trial counsel consciously decided not to object Garrett's improper bolstering testimony pursuant to a valid trial strategy. *See Griffin v. Warden*, 970 F.2d 1355, 1358 (4th Cir. 1992) (explaining "courts should not conjure up tactical decisions an attorney could have made"). As discussed below, the Court will reserve its ruling pending an evidentiary hearing on the issue of strategy and further briefing on the *Strickland* prejudice prong.

### (ii)     Dr. Nancy Henderson

The S.C. Court of Appeals summarized Dr. Henderson's testimony at issue:

At trial, Dr. Henderson was qualified as an expert "in the examination, diagnosis, and treatment of child sexual abuse." Thus, it was proper for her to opine that based on her examination, Victim's injuries were consistent with sexual abuse. However, she stated her opinion was based not only on her examination, but also "on the history that Victim shared with her." **Directly after this comment, Dr. Henderson opined that Victim had been sexually abused. On cross-examination, Dr. Henderson elaborated on these statements and testified that "based on the history that Victim shared, and she denies any other kind of trauma to that area . . . my conclusion is . . . as I stated."**

**When asked whether she based her decision on possibly untrue information from Victim, Dr. Henderson stated, "I based it on the information received by my patient, which is invaluable information any doctor receives when they are examining a patient." When asked whether she assumed Victim's information was true, Dr. Henderson responded, "Based on the way she shared it and all the information that she shared, yes."**

*Mangal I*, 781 S.E.2d at 736 (internal citations and brackets omitted) (emphasis added); *see* App. 147–69 (Dr. Henderson's testimony). Petitioner claims Dr. Henderson's testimony—elicited by the State on direct *and by trial counsel on cross-examination*—improperly bolstered the victim's credibility.[19] At the state-court PCR hearing, trial counsel was asked about some of Dr. Henderson's direct examination opinion testimony:

At the PCR hearing, trial counsel admitted that he did not object when Dr. Henderson was asked whether her findings were consistent with a penetrating injury and she responded that she believed Victim was abused. On cross-examination, trial counsel stated he expected Dr. Henderson to opine that Victim was abused because her testimony was "canned testimony." Trial counsel explained that he had been in cases with Dr. Henderson before, and he probably should have objected when she gave an opinion on the

---

[19] The R & R incorrectly indicates Petitioner challenges only a portion of Dr. Henderson's *direct* examination testimony. *See* R & R at p. 33. However, Petitioner's § 2254 petition, response in opposition, and objections indicate his claim is also based on trial counsel's eliciting improper bolstering testimony from Dr. Henderson on *cross*-examination. *See* ECF No. 1-1 at pp. 8, 10; Pet.'s Objs. at pp. 6–8; ECF No. 34 at pp. 16–23.

ultimate issue.  On redirect, trial counsel was asked if the comment struck "a cord as improper bolstering" during trial, and trial counsel stated it did not.

*Mangal I*, 781 S.E.2d at 735; *see* App. 570–97 (trial counsel's testimony).

While the S.C. Court of Appeals concluded that "Dr. Henderson's testimony was improper bolstering" and that "there is no other way to interpret [her] comments other than to mean that Dr. Henderson believed Victim was truthful," *Mangal I*, 781 S.E.2d at 736–37, the S.C. Supreme Court strongly hinted that "Dr. Henderson's ***direct*** examination opinion testimony" was *not* improper bolstering and that her "***cross-examination*** testimony"—though improper bolstering on its face—was "intentionally invited" by trial counsel.  *Mangal II*, 805 S.E.2d at 572, 576 (emphases added).  Nevertheless, the S.C. Supreme Court found the claim procedurally defaulted without resolving it on the merits.  *Id.* at 576 ("We need not decide whether this was a valid trial strategy.  We simply find this evidence does not support the extraordinary action of excusing Mangal's procedural default." (internal footnote omitted)).[20]

---

[20]     The S.C. Supreme Court observed:

> [T]he State makes a convincing argument that trial counsel elicited this testimony intentionally pursuant to a valid trial strategy. . . .  Trial counsel testified this was "not the first time I've been with Dr. Henderson."  When asked if he expected Dr. Henderson to give an opinion on whether the victim had been sexually abused, trial counsel answered, "Not only did I expect it, but if she had answered any other way I would have been shocked, because Dr. Henderson's testimony is canned testimony.  And she'll testify the same way in every trial."  The State argues trial counsel, knowing Dr. Henderson would give an opinion the victim had been sexually abused, attempted to undermine her opinion by demonstrating to the jury that Dr. Henderson's opinion was not based on the objective results of her physical examination, but rather on the victim's fabricated statements.  The State argues trial counsel then intentionally invited Dr. Henderson to admit she based her opinion on the truth of what the victim told her.  According to the State, this allowed trial counsel to impeach Dr. Henderson's opinion with the weaknesses he had previously shown in the victim's credibility.  Otherwise, the State argues, trial counsel was left with an expert opinion based only on objective physical findings—a far more difficult opinion to impeach.

Given the S.C. Supreme Court's procedural default finding, the Court's review of this *Martinez* claim (and the other two) remains de novo. *See Gray*, 806 F.3d at 789. The Court will reserve its ruling pending an evidentiary hearing on this issue of strategy and further briefing on the *Strickland* prejudice prong.

### (iii)     Victim's Mother (Diane Farid)

Petitioner called the victim's mother as a defense witness, and the R & R thoroughly summarizes her testimony. *See* App. 256–319; R & R at pp. 37–38. On direct examination, she testified that on June 15, 2004, the victim "finally was able to confide in me that her father had been molesting her since she was ten." App. 276. The mother "admitted that when Petitioner was arrested, she gave police a statement indicating Victim had disclosed the abuse to her but Victim stated she had not allowed penetration or oral sex." *Mangal I*, 781 S.E.2d at 734; *see* App. 276–79. The mother further testified, "I am telling you the truth in what I'm saying that my child was violated." App. 281.

On cross-examination, the State elicited the following testimony, which Petitioner claims was improper bolstering:

> **Q:      [D]id you question her about why she had waited so long?**
>
> **A:      Yes, of course.  I mean that kept running through my mind why, why did she not, why did she not come to me.**
>
> **Q:      And did she tell you why?**
>
> **A:      She told me she was afraid because he promised to hurt**

---

*Mangal II*, 805 S.E.2d at 576 (internal citation omitted). The S.C. Supreme Court never actually accepted or rejected the State's argument. *See id.* ("We need not decide whether this was a valid trial strategy. We simply find this evidence does not support the extraordinary action of excusing Mangal's procedural default." (internal footnote omitted)). The S.C. Supreme Court noted, "If we were to excuse the procedural default for failing to present this claim to the PCR court, it would be necessary to remand to the PCR court for a hearing because the PCR court was not given the opportunity to make factual findings as to the reasonableness of this strategy, and if found not to be a reasonable strategy, whether the applicant suffered prejudice." *Id.* at n.10.

**her brothers and myself if she ever, ever told anybody.**

**Q:** **At that time did you believe what your daughter was telling you?**

**A:** **Yes, ma'am, I did, and I still do.**

**Q:** **What made you believe her?**

**A:** **Because she's my child.**

**Q:** **Yes, ma'am.**

**A:** **She had no reason, she had no reason to lie about something like that. She had – and if anybody could of seen the level of how distraught she was, the look in her eyes, the begging, please help me, that's why I believed her.**

App. 314 (emphases added). Trial counsel did not object to this testimony. Respondent contends this testimony does not constitute improper bolstering because it did not come from a prosecution witness. *See* ECF No. 20 at p. 63. However, as mentioned above, "***no*** witness may give an opinion as to whether the victim is telling the truth." *Briggs*, 806 S.E.2d at 718 (emphasis added). This testimony unmistakably conveyed the mother's opinion that she believed her daughter was telling the truth about the alleged abuse. *Id.* at 719 (finding testimony that "clearly conveyed to the jury that [the witness] believed the victim" was improperly bolstering).

Respondent further asserts the above testimony could not have prejudiced Petitioner in light of the mother's repeated assertions on direct examination "that she believed her daughter's report of molestation by Petitioner." ECF No. 20 at p. 64. The Magistrate Judge reaches the same conclusion. *See* R & R at p. 39 (citing App. 281). However, on direct examination, the mother testified *she herself* was "telling the truth" that her daughter was violated, *see* App. 281—not that she *believed* her daughter.

Like his approach to Garrett and Dr. Henderson, trial counsel's lack of an objection could well have been the result of a "sound trial strategy," *Strickland*, 466 U.S. at 689, but the record remains unclear. The Court will reserve its ruling pending an evidentiary hearing on this issue regarding strategy and further briefing on the *Strickland* prejudice prong.

## b.      Prejudice Prong

To satisfy *Strickland*'s prejudice prong, Petitioner must show a "reasonable probability" that the outcome of trial would have been different had the jury not heard the improper bolstering testimony. *See* 466 U.S. at 694. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the . . . jury." *Id.* at 695. "*Strickland* asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "In jurisdictions such as South Carolina, where a jury must return a unanimous verdict to convict, the prejudice prong of *Strickland* is met where 'there is a reasonable probability that at least one juror would have struck a different balance.'" *Hope v. Cartledge*, 857 F.3d 518, 524 (4th Cir. 2017) (quoting *Wiggins v. Smith*, 539 U.S. 510, 537 (2003)).

Here, strong arguments can be made for and against *Strickland* prejudice. On one hand, the case lacked physical evidence and hinged on the victim's credibility, and the evidence of Petitioner's guilt was not overwhelming. *See Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) ("[W]hen a trial comes down to a single issue such as the credibility of a witness, deficient performance by defense counsel regarding that credibility issue may cause prejudice."). Problematically, Garrett, Dr. Henderson, and the victim's mother all gave testimony effectively vouching for the victim's credibility. The State emphasized Garrett's and Dr. Henderson's *expert* testimony in its closing argument. App.

510–11; *see Briggs*, 806 S.E.2d at 722 ("[T]he impermissible harm from improper bolstering is compounded when the witness is qualified as an expert." (internal quotation marks omitted)). In particular, the solicitor repeated Garrett's testimony and told the jury that Garrett did not think the victim was lying. App. 510 ("Her words, disclosures, descriptions, emotions, reactions are all consistent with a child that has been sexually abused. And yes, I've had teenagers who came in lying, and no, she wasn't in my opinion. . . . Her disclosure was compelling.").

On the other hand, both trial counsel (in his closing argument) and the trial court (when instructing the jury) informed the jury of its duty to determine the believability and credibility of the witnesses. *See* App. 472, 481–82, 522–23. The trial court also instructed the jury that although Garrett and Dr. Henderson had been qualified as experts "[t]hat does not mean that you must accept the opinion." App. 122, 152–53. *But see United States v. Luck*, 611 F.3d 183, 190 (4th Cir. 2010) ("Merely giving general instructions as to witness credibility is not sufficient to give confidence that the outcome was not tainted by prejudice."). Trial counsel also challenged the victim's credibility during closing argument, reiterated his theory that the victim and her allegedly adulterous mother fabricated the abuse allegations, and pointed to what he deemed were weaknesses in the expert testimony of Garrett and Dr. Henderson.[21] App. 471–99. The victim's brother Rashan gave testimony strongly incriminating Petitioner—namely, that his sister told him the abuse started when she was ten and happened until she was sixteen, and that on numerous occasions Petitioner took his sister into a locked room and she would leave visibly upset and crying and go to the bathroom. App. 96, 98. Finally—and most importantly—regardless of any improper bolstering/vouching, the jury itself had the opportunity to hear

---

[21] For example, trial counsel argued, "Wiley Garrett believes Victim. But Wiley Garrett didn't have all the information." App. 481.

the testimony of both the victim and Petitioner and to judge their credibility.

However, Respondent and the Magistrate Judge primarily focus on trial counsel's performance (the *Strickland* deficiency prong) and only briefly address the *Strickland* prejudice prong.[22] In light of the concerns expressed above, the Court will order further briefing on the *Strickland* prejudice prong as it relates to the improper bolstering claims as well as an evidentiary hearing on the deficiency prong regarding the improper bolstering claims concerning trial counsel.[23]

### B.    Whether PCR Counsel Was Ineffective

*Martinez* further requires Petitioner to show PCR counsel "was ineffective under the standards of *Strickland*." 566 U.S. at 14. This showing "requires a full analysis under *Strickland* to determine whether [PCR] counsel's conduct fell below the constitutionally permissible threshold and prejudiced the outcome of the [PCR] proceeding." *Juniper*, 117 F. Supp. 3d at 790. Thus, in addition to trial counsel, the Court must consider the *Strickland* deficiency and prejudice prongs *as they apply to PCR counsel*.

### 1.    Deficiency Prong

---

[22] Respondent cites *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), and *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), to support its argument that Petitioner did not suffer prejudice from the improper bolstering testimony. *See* ECF No. 20 at p. 54. However, the *Donnelly*/*Darden* standard applies to "a prosecutor's improper comments," such as remarks in an opening statement or closing argument. *Bennett v. Stirling*, 842 F.3d 319, 323 (4th Cir. 2016). The correct prejudice standard for Petitioner's ineffective assistance claims is that of *Strickland*, as made clear in *Darden* itself. *See Darden*, 477 U.S. at 184 ("Petitioner contends that he was denied effective assistance of counsel at . . . trial. That claim must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 688 (1984)).

[23] The parties may find the *Strickland* prejudice analyses in the following cases helpful: *Gabaree v. Steele*, 792 F.3d 991, 999-1000 (8th Cir. 2015); *Thomas v. United States*, 596 F. App'x 808, 810 (11th Cir. 2015); *Engesser v. Dooley*, 457 F.3d 731, 738–39 (8th Cir. 2006); *Earls v. McCaughtry*, 379 F.3d 489, 495–96 (7th Cir. 2004); *Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001); *Olesen v. Class*, 164 F.3d 1096, 1102 (8th Cir. 1999); *White v. Nooth*, 322 F. Supp. 3d 1077, 1092–93 (D. Or. 2018); *Parmelee v. Piazza*, 622 F. Supp. 2d 212, 229–30 (M.D. Pa. 2008); *Thompson v. State*, 814 S.E.2d 487, 494–95 (S.C. 2018); *Briggs v. State*, 806 S.E.2d 713, 722–23 (S.C. 2017).

The *Strickland* deficiency prong requires Petitioner to show PCR counsel's representation was objectively unreasonable "under prevailing professional norms." 466 U.S. at 688. As mentioned above, South Carolina law was clear after 1989 that no witness may opine whether a victim is telling the truth. *Thompson*, 814 S.E.2d at 491 (citing *Dawkins*); *Briggs*, 806 S.E.2d at 718 (same). Additionally, in 2009 and 2010, the South Carolina Supreme Court issued two decisions recognizing that forensic interviewers may not give improper bolstering testimony. *See Smith v. State*, 689 S.E.2d 629 (S.C. 2010); *State v. Douglas*, 671 S.E.2d 606 (S.C. 2009). "After *Dawkins* in 1989, certainly after *Douglas* in 2009 and *Smith* in 2010, reasonably competent trial counsel should know to object—absent a valid trial strategy—when a forensic interviewer gives testimony that indicates the witness believes the victim, but does not serve some other valid purpose." *Briggs*, 806 S.E.2d at 718. All three decisions—*Dawkins*, *Douglas*, and *Smith*—were established law when the PCR hearing occurred in April 2011. App. 616. Thus, the improper bolstering claims—including that regarding Garrett, a forensic interviewer—would have been viable in the state PCR proceedings, yet were not properly raised by PCR counsel.

It is undisputed that PCR counsel failed to properly raise the claim concerning Dr. Henderson and failed altogether to raise the claims concerning Garrett and the victim's mother. *See Mangal II*, 805 S.E.2d at 576 (finding the claim concerning Dr. Henderson was procedurally defaulted); *Mangal I*, 781 S.E.2d at 735–36 (indicating the claims concerning Garrett and the victim's mother "were not raised" in the PCR court). In particular, it is unclear why PCR counsel did not raise the claim regarding Garrett—an expert witness who gave improper bolstering testimony—when he did raise the (albeit untimely) claim regarding Dr. Henderson. An evidentiary hearing as to PCR counsel's strategy and/or reasons should address PCR counsel's failure to properly raise the improper bolstering claims in the

state PCR proceedings.

### 2. Prejudice Prong

The *Strickland* prejudice prong requires Petitioner to show a reasonable probability that but for PCR counsel's deficient performance, the result of the state PCR proceedings would have been different. *Juniper*, 117 F. Supp. 3d at 790; *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016). This analysis largely hinges on whether the underlying ineffective-assistance-of-trial-counsel claims would have been successful; in other words, the prejudice analysis for PCR counsel dovetails with the *Strickland* analysis for trial counsel. *Juniper*, 117 F. Supp. 3d at 790. The Court will order further briefing on this issue.

## III. Evidentiary Hearing

In sum, there is a genuine dispute of material fact regarding trial counsel's and PCR counsel's alleged deficiencies relating to the improper bolstering testimony. *See generally Brandt*, 636 F.3d at 132 (recognizing Fed. R. Civ. P. 56 "applies to habeas proceedings"). The Court finds an evidentiary hearing is necessary on the *Strickland* deficiency prong as it relates to the performance of both trial and PCR counsel.[24] *See Schriro v. Landrigan*, 550 U.S. 465, 468 (2007) ("In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court."); *Martinez*, 566 U.S. at 14 (explaining a court may "hear" the procedurally defaulted claim "as an equitable matter"); *Gray*, 806 F.3d at 789 (explaining a federal court considers a *Martinez* claim de novo); *Segundo v. Davis*, 831 F.3d 345, 351 (5th Cir. 2016) (discussing evidentiary hearings in the context of *Martinez*); *see, e.g., Teleguz*,

---

[24]     Petitioner has requested an evidentiary hearing. *See* ECF No. 1-1 at p. 13; ECF No. 34 at p. 25; Pet.'s Objs. at pp. 2–3, 9.

806 F.3d at 806–07, 820 (hearing an appeal from a district court that had allowed testimony on a *Martinez* claim); *Stokes v. Stirling*, No. 1:16-cv-00845-RBH, 2018 WL 4678578, at *3 (D.S.C. Sept. 28, 2018) (involving an "evidentiary hearing on the *Martinez* claims"); *Belmar v. Clarke*, 2018 WL 1568680, at *1 (E.D. Va. Mar. 30, 2018) (explaining the court had held an evidentiary hearing on a *Martinez* claim because the petitioner had "sufficient preliminary showing").

In accordance with Rule 8 of the Rules Governing Section 2254 Cases, the Court will recommit this matter to the Magistrate Judge with instructions to hold an evidentiary hearing on the improper bolstering claims raised in Ground Two of Petitioner's § 2254 petition. **This evidentiary hearing will be limited to the improper bolstering claims in Ground Two and will NOT cover any other grounds or claims.** The Magistrate Judge should appoint counsel for Petitioner pursuant to Rule 8(c) and 18 U.S.C. § 3006A.

The Court will hold in abeyance its ruling on the improper bolstering claims raised in Ground Two pending completion of the evidentiary hearing and briefing. **The Court emphasizes that the analysis in this Order in no way constitutes a ruling on the merits of Petitioner's improper bolstering claims. The Court has merely discussed the concerns presented by those claims and reserves its ruling on the merits.**

### Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases. A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies relief on the merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find that the court's assessment of the

constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003). When the district court denies relief on procedural grounds, the prisoner must demonstrate *both* that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right. *Slack*, 529 U.S. at 484–85. In this case, the Court concludes that Petitioner has failed to make the requisite showing of "the denial of a constitutional right" regarding Ground One and the expert qualification issued raised in Ground Two.

## Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART AND REJECTS IN PART** the Magistrate Judge's R & R [ECF No. 52]. Specifically, the Court **ADOPTS** the R & R as to the factual and procedural summary, the legal standards, the disposition of Ground One, and the disposition of the expert qualification issue (relating to Wiley Garrett) raised in Ground Two. The Court **GRANTS** Respondent's motion for summary judgment [ECF No. 21] with respect to Ground One and the expert qualification issue raised in Ground Two, and **DENIES** a certificate of appealability as to these issues.

The Court **REJECTS** the R & R as to the analysis of Petitioner's improper bolstering claims raised in Ground Two, **HOLDS IN ABEYANCE** its ruling on these claims, and **RECOMMITS** this matter to the Magistrate Judge with instructions to conduct an evidentiary hearing and to submit another Report and Recommendation regarding the following:

(1)     The improper bolstering claims of Petitioner and *trial* counsel's strategy and/or reasons regarding same; and

(2)     The improper bolstering claims of Petitioner and *PCR* counsel's strategy and/or reasons regarding same.

Additionally, the Magistrate Judge should direct both parties to brief the issue of the *Strickland* prejudice prong as it applies to both trial counsel and PCR counsel, and the Magistrate Judge should

analyze this issue in the Report and Recommendation.  Finally, the Magistrate Judge should appoint counsel for Petitioner to assist with the above matters.

       **IT IS SO ORDERED.**


Florence, South Carolina                                s/ R. Bryan Harwell
April 8, 2019                                          R. Bryan Harwell
                                                 United States District Judge